**In re Christopher FLEMING and Jonette Fleming, Debtors.**

**In re Latasha Nicole Fayne, Debtor.**

**In re Avary B. Kemp, Sr. and Kathryn Kemp, Debtors.**

**In re Billy W. Hill, Debtor.**

Nos. 05–61894–659, 05–62267–399, 05–62008–659, 05–62053–399.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

March 27, 2006.

James R. Brown, Castle Law Office of St. Louis, St. Louis, MO, Frank R. Ledbetter, St. Louis, MO, for Debtors.

## OPINION DETERMINING APPLICABLE RATE OF INTEREST ON CLAIMS SECURED BY VEHICLES PURCHASED FOR PERSONAL USE WITHIN 910 DAYS OF BANKRUPTCY FILING

BARRY S. SCHERMER, Chief Judge.

The issue before the Court is the applicable rate of interest to be paid pursuant to a Chapter 13 plan to the holder of a claim secured by a vehicle purchased for personal use within 910 days prior to the bankruptcy filing. The issue has been raised in each of the above-referenced cases. The secured creditors argue that the applicable interest rate should be the rate set forth in the contract covering the financing of the vehicle purchase. The debtors argue that the applicable interest rate should be the interest rate applicable for secured claims in Chapter 13 plans established pursuant to Local Bankruptcy Rule 3015–3. An amicus brief supporting the debtors' position was filed in each case by Attorneys Wendell J. Sherk and James J. Haller.

The relevant facts are the same in each case. The debtor purchased a motor vehicle within the 910-day period preceding the bankruptcy filing for his or her personal use. The debtor financed the purchase of the vehicle and as of the date of the bankruptcy filing owed money to the holder of a claim secured by a purchase money security interest in such vehicle (the "Car Creditor"). The debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code after the effective date of all provisions of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The debtor has proposed a Chapter 13 plan which provides for a stream of payments to the Car Creditor on account of the Car Creditor's claim at the rate applicable for secured claims set forth in Local Bankruptcy Rule 3015-3. The rate of interest set forth in the contract with the Car Creditor exceeds the interest rate applicable for secured claims in Chapter 13 plans established pursuant to Local Bankruptcy Rule 3015-3.[1]

To resolve the issue in this District, the Court has decided to issue this joint Opinion.

## FACTS

### In re Christopher and Jonette Fleming, Case Number 05-61894

On May 16, 2003, Christopher and Jonette Fleming (the "Flemings") purchased a 2001 Chevrolet Venture ("Fleming Vehicle") for their personal use, pursuant to an installment sales contract. The contract was assigned to Arsenal Credit Union ("Arsenal"). Arsenal is the holder of a perfected purchase money security interest in the Fleming Vehicle. The Flemings filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 11,

2005. The balance due Arsenal as of the petition date is $13,716.69. The installment sales contract requires interest at the rate of 17.90%.

The Flemings filed their Chapter 13 Plan on November 11, 2005 to which Arsenal and the Chapter 13 Trustee filed objections. The Flemings filed a First Amended Chapter 13 Plan on January 17, 2006 which proposes to pay Arsenal in equal monthly payment over 36 months with 6.6% interest and with any unsecured portion of the debt to be paid as non-priority unsecured debt, estimated as set forth:

| Creditor | Estimated Balance Due | Proposed Secured Value |
|---|---|---|
| Arsenal | $13,893.61 | $6,487.00 |

The First Amended Chapter 13 Plan resolved the Chapter 13 Trustee's objection.

Arsenal objects to the First Amended Chapter 13 Plan. Arsenal asserts that the Flemings lack authority to cram down its claim so as to bifurcate it into secured and unsecured components.

Counsel for the Flemings indicated at the confirmation hearing held on February 2, 2006, that the Flemings intend only to cram down the interest rate. The Flemings must amend their plan to provide for payment of Arsenal's claim in full without any reference to an unsecured portion of the debt.

Arsenal also objects to confirmation of the Fleming's First Amended Chapter 13 Plan because it fails to pay Arsenal its contract rate of interest. The Flemings argue that Arsenal is not entitled to interest at the contract rate and argue rather that Arsenal is only entitled to interest at the rate established by Local Bankruptcy Rule 3015-3. Arsenal and the Flemings

---

1. The applicable interest rate for plans in Chapter 13 cases in which the petition was filed between July 1, 2005, and December 31, 2005, is 6.60%.

submitted well-written briefs supporting their respective positions.

### In re Latasha Fayne, Case Number 05–62008

On July 12, 2004, Latasha Fayne ("Fayne") purchased a 2003 Mitsubishi Galant ("Fayne Vehicle") for her personal use, pursuant to an installment sales contract. The contract was assigned to Meridian Credit Union ("Meridian"). Meridian is the holder of a perfected purchase money security interest in the Fayne Vehicle.

Fayne filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 29, 2005. The balance due Meridian as of the petition date is $13,554.93. The installment sales contract requires interest at the rate of 17.90%.

Fayne filed her Chapter 13 Plan on November 29, 2005 to which the Chapter 13 Trustee filed an objection. Fayne filed a 1st Amended Chapter 13 Plan on January 23, 2006 which proposes to pay Meridian in equal monthly payment over 60 months with 6.6% interest and with any unsecured portion of the debt to be paid as non-priority unsecured debt, estimated as set forth:.

| Creditor | Estimated Balance Due | Proposed Secured Value |
|---|---|---|
| Meridian | $13,644.00 | $9,904.00 |

The 1st Amended Chapter 13 Plan resolved the Chapter 13 Trustee's objection.

Meridian objects to the 1st Amended Chapter 13 Plan. Meridian asserts that Fayne lacks authority to cram down its claim so as to bifurcate it into secured and unsecured components.

Counsel for Fayne indicated at the confirmation hearing held on February 2, 2006, that Fayne intends only to cram down the interest rate. Fayne must amend her plan to provide for payment of

Meridian's claim in full without any reference to an unsecured portion of the debt.

Meridian also objects to confirmation of Fayne's 1st Amended Chapter 13 Plan because it fails to pay Meridian its contract rate of interest. Fayne argue that Meridian is not entitled to interest at the contract rate and argues rather that Meridian is only entitled to interest at the rate established by Local Bankruptcy Rule 3015–3. Meridian and Fayne submitted well-written briefs supporting their respective positions.

### In re Avary Kemp and Kathryn Kemp, Case Number 05–62053

In 2004, Avary and Kathryn Kemp purchased a 2004 Dodge Durango Truck ("Kemp Truck") for their personal use. DaimlerChrysler Services North America, L.L.C. ("DCS") is the holder of a purchase money security interest in the Kemp Truck. The DCS contract on the Kemp Truck requires interest at the rate of 13.39%.

In 2005, Avary and Kathryn Kemp purchased a 2005 Chrysler PT Cruiser ("Kemp Car") for their personal use. DCS is the holder of a purchase money security interest in the Kemp Car. The DCS contract on the Kemp Car requires interest at the rate of 20%.

Avary and Kathryn Kemp filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on December 1, 2005.

Avary and Kathryn Kemp filed a Chapter 13 Plan on December 4, 2005. The plan proposes to pay DCS in equal monthly payments over sixty months with 6.6% interest and with any unsecured portion of the debt to be paid as non-priority unsecured debt, estimated as set forth:

| Creditor | Balance Due | Amount entitled to secured status | Estimated Total with interest |
|---|---|---|---|
| Chrysler | $14,177 | $14,177 | $18,855.41 |
| Chrysler | $23,848 | $23,848 | $31,718 |

DCS objected to the plan because it fails to pay DCS its contract rate of interest.

**In re Billy Hill, Case Number 05–62267**

Billy Hill purchased for his personal use a 1997 Ford Expedition motor vehicle ("Hill Vehicle") on February 3, 2004, pursuant to an installment sales contract. The contract was assigned to Meridian Credit Union ("Meridian"). Meridian is the holder of a perfected purchase money security interest in the Hill Vehicle.

Billy Hill filed a petition for relief under Chapter 13 of the Bankruptcy Code on December 22, 2005.

The balance due Meridian as of the petition date is $10,246.77.

The installment sales contract requires interest at the rate of 10.5%.

On January 6, 2006, Billy Hill filed a Chapter 13 Plan which was unclear with respect to its treatment of Meridian's claim.

Meridian and the Chapter 13 Trustee objected to the plan.

Billy Hill filed a First Amended Chapter 13 Plan which proposes to pay Meridian in equal monthly payments over sixty months with 6.6% interest and with any unsecured portion of the debt to be paid as nonpriority unsecured debt, estimated as set forth:

| Creditor | Balance Due | Amount entitled to secured status | Estimated Total with interest |
|---|---|---|---|
| Meridian | $9,9686 | $9,968 | $13,258 |

The First Amended Plan resolved the Chapter 13 Trustee's objection.

Meridian objects to the First Amended Plan. Meridian asserts that Billy Hill lacks authority to cram down its claim so as to bifurcate it into secured and unsecured components.

Billy Hill concedes that he cannot bifurcate Meridian's claim into secured and unsecured components. In Billy Hill's brief, he states that he has proposed to pay the full amount of principal to Meridian in the First Amended Plan; however, the language of the First Amended Plan is unclear on this issue. Billy Hill should amend his plan to provide for payment of the claim in full without any reference to an unsecured portion of the debt.[2]

Meridian also objects to confirmation of the First Amended Plan because it fails to pay Meridian its contract rate of interest.

Billy Hill argues that Meridian is not entitled to interest at the contract rate. Rather, he argues, Merdian is only entitled to interest at the rate established by Local Bankruptcy Rule 3015–3.

Meridian and Billy Hill submitted well-written briefs supporting their respective positions.

## LEGAL CONCLUSIONS

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(L) and Local Rule 81–9.01(B) of the United States District Court for the Eastern District of Missouri.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

The Car Creditors are holders of claims secured by vehicles.

A Chapter 13 plan may modify the rights of holders of unsecured claims and of secured claims other than the holders of claims secured only by an interest in the debtors' principal residence. 11 U.S.C.

---

**2.** The language in Subparagraph 3(F) of the Disbursements Section of the February, 2006, version of the Local Form Chapter 13 Plan accomplishes the proper treatment of a claim secured by a purchase money security interest in a vehicle acquired for personal use of the debtor within 910 days preceding the bankruptcy filing. See Local Form 13.

§ 1322(b)(2). Section 1322(b) of the Bankruptcy Code thus permits the modification of the Car Creditors' claims. BAPCPA did not alter this provision.

Section 1325 of the Bankruptcy Code sets forth the requirements for confirmation of a Chapter 13 plan. 11 U.S.C. § 1325. In order to be confirmed, a Chapter 13 plan must provide one of three treatment options to secured creditors: (1) provide the secured creditor with treatment that the secured creditor has accepted; (2) provide for the surrender of the collateral to the secured creditor; or (3) keep the collateral and provide the secured creditor with a stream of payments equal to the amount of the creditor's secured claim. 11 U.S.C. § 1325(a)(5).

Where the debtor elects to retain the vehicle and provide a stream of payments, the plan must satisfy three separate requirements. First, the plan must provide that the secured creditor retain its lien until the earlier of the payment of the underlying debt pursuant to non-bankruptcy law or the issuance of a discharge. The plan must also provide that if the case is dismissed or converted without completion of the plan the secured creditor shall retain its lien to the extent recognized by non-bankruptcy law. 11 U.S.C. § 1325(a)(5)(B)(I).

Second, the plan must provide that the value as of the effective date of the plan of property to be distributed under the plan on account of the secured claim is not less than the allowed amount of such claim. 11 U.S.C. § 1325(a)(5)(B)(ii). This section mandates that the secured creditor receive the present value of its claim as of the petition date. The Supreme Court has interpreted this section to require the payment of interest on the secured claim at a current rate determined by an adjustment from the prime rate based on the risk of nonpayment. *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The Supreme Court expressly rejected the use of the contract rate of interest to satisfy the present value requirement in a Chapter 13 plan. In this District, the interest rate applicable for secured claims in Chapter 13 plans established pursuant to Local Bankruptcy Rule 3015–3 is presumed to be an appropriate rate under *Till.*

Third, if the plan provides for periodic payments, such payments must be in equal monthly amounts and must be in an amount sufficient to provide adequate protection to the secured creditor. 11 U.S.C. § 1325(a)(5)(B)(iii). This third requirement is designed to protect the secured creditor from any decrease in the value of its collateral during the life of the Chapter 13 plan.

Prior to BAPCPA, a debtor need only provide a secured creditor with lien retention and present value in order to retain its collateral under a Chapter 13 plan. BAPCPA expanded the lien retention requirement to specify the duration of the lien retention and to expressly state that the lien would remain in effect if the debtor failed to complete the plan. 11 U.S.C. § 1325(a)(5)(B)(i). BAPCPA added the requirements that periodic payments be in equal monthly amounts and that the payments be in an amount sufficient to provide adequate protection to the secured creditor. 11 U.S.C. § 1325(a)(5)(B)(iii). BAPCPA made no changes to the language requiring that the secured creditor receive the present value of its claim. 11 U.S.C. § 1325(a)(5)(B)(ii).

BAPCPA made an additional change to Section 1325 of the Bankruptcy Code applicable to the Car Creditors. At the end of subsection (a)(9) of Section 1325, BAPCPA added the following language:

For purposes of paragraph (5), section 506 shall not apply to a claim described

in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (*sic*) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9)(hereinafter the "910 Day Car Language"). This new language has created the confusion leading to the present dispute. Therefore, an analysis of this provision is necessary.

■ According to the 910 Day Car Language, Section 506 of the Bankruptcy Code does not apply to secured creditors with purchase money security interests in vehicles acquired by a debtor for personal use within 910 days prior to the bankruptcy filing. Each of the Car Creditors falls within the 910 Day Car Language. Section 506 of the Bankruptcy Code allows the bifurcation of the claims of secured creditors into secured and unsecured claims based on the value of the creditor's collateral at the time of the bankruptcy filing. 11 U.S.C. § 506. Prior to BAPCPA, Section 506 allowed a debtor to strip down a car creditor's secured claim to the current value of the collateral and treat the balance owed the secured creditor as an unsecured claim. The 910 Day Car Language prevents a debtor from cramming down the value of the Car Creditors' claims. Instead, each Car Creditor's secured claim is allowed in the amount of the balance owed as of the petition date. The value of the collateral is irrelevant in determining the allowed amount of the secured claim.

■ Now that we know how to calculate the Car Creditor's secured claim, we must next address what impact, if any, the 910 Day Car Language has on the permissible treatment of the Car Creditor's secured claim in the Chapter 13 plan. The debtor has three choices: surrender the vehicle, provide treatment acceptable to the Car Creditor, or retain the car and provide the Car Creditor with a stream of payments. Each of these debtors has selected to retain the vehicle and therefore must provide the Car Creditor with lien retention and a stream of monthly payments equal to present value, in equal monthly amounts, and sufficient to provide adequate protection.

The Car Creditors argue that the 910 Day Car Language alters the present value requirement of Section 1325(a)(5)(B)(ii). We disagree. The only thing the 910 Day Car Language does is render Section 506 of the Bankruptcy Code not applicable to the Car Creditors' claims. The 910 Day Car Language merely prohibits the bifurcation and cram down of the Car Creditors' claims and thus quantifies the Car Creditors' secured claims at the balance due on the filing date. The 910 Day Car Language has no impact on the requirement to pay present value set forth in Section 1325(a)(5)(B)(ii) other than to clarify the dollar amount of the claim which must receive present value. *Till* still controls what interest rate is required to ensure present value under Section 1325(a)(5)(B)(ii). *In re Johnson*, 337 B.R. 269 (Bankr.M.D.N.C.2006); *In re Robinson*, 338 B.R. 70 (Bankr.W.D.Mo.2006); *In re Wright*, 338 B.R. 917 (Bankr.M.D.Ala. 2006). Accordingly, the proper interest rate to be paid to the Car Creditors in the Chapter 13 plans is the interest rate applicable for secured claims in Chapter 13 plans established pursuant to Local Bankruptcy Rule 3015-3.

■ The Car Creditors argue that the 910 Day Car Language protects their claims from any modification in a Chapter

13 plan. The plain language of the statute controls. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The 910 Day Car Language does not support this argument. To the contrary, where Congress wanted to prohibit any modification in treatment of a secured creditor in a Chapter 13 plan it has done so. In Section 1322(b)(2) of the Bankruptcy Code, Congress expressly prohibits a debtor from modifying the rights of a creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence. Had Congress wanted to provide such treatment to Car Creditors in BAPCPA, they could have done so by using the language they used to provide such treatment to home mortgagees. Congress did not. Congress did not add any language to Section 1322(b)(2) mentioning 910 Day Car Creditors nor did it include such language in Section 1325 where it created the special treatment for 910 Day Car Creditors.

The Car Creditors argue that the new language in Section 1325(a)(5)(B)(i)(I)(aa), which requires that the Car Creditor retain its lien until payment of the underlying debt determined under non-bankruptcy law, mandates payment of the debt at the contract rate of interest. This language must be read in its context. Section 1325(a)(5)(B)(i)(I)(aa) is one of two alternative subsections. Section 1325(a)(5)(B)(i)(I) requires lien retention until the **earlier of** payment of the underlying debt determined under non-bankruptcy law **or** Chapter 13 discharge. If the debtor completes all payments pursuant to a plan which pays the Car Creditor the present value of the balance owed as of the petition date, the debtor will receive a discharge. At that point in time, the Car Creditor's lien may be discharged with its claim under 1325(a)(5)(B)(i)(I)(bb). If, on the other hand, the debtor fails to complete payments under the Chapter 13 plan, the debtor will not receive a discharge. In this scenario, the lien remains and the Car Creditor is entitled to collect the amount of its claim as determined under non-bankruptcy law—including interest at the contract rate—under 1325(a)(5)(B)(i)(I)(aa).

█ The Car Creditors also argue that they should receive the contract rate of interest because their liens cover post-petition interest at the contract rate and that since Section 506 does not apply to them, such liens for post-petition interest at the full contract rate cannot be avoided. If the liens are not avoided, they remain effective and the Car Creditors will be free to enforce their right to receive post-petition interest at the full contract rate after the bankruptcy case has terminated. Again, we disagree. The Chapter 13 plan may modify the Car Creditors' rights under Section 1322(b)(2) as long as it provides the lien retention—present value—periodic payments treatment required under Section 1325(a)(5)(B) to the claim as quantified without reference to Section 506. Section 502 controls allowance of claims and requires the allowance of a claim which has been objected to in the amount due as of the filing date. 11 U.S.C. § 502(b). Any claim for interest which is un-matured as of the filing date is disallowed if objected to. 11 U.S.C. § 502(b)(2).[3] Thus, the Car Creditor's secured claim does not include post-petition interest. The Chapter 13 plan need only provide the Car Creditor with the amount of its secured claim—which excludes post-petition interest. If the debtor pays such secured claim in full under the Chapter 13

---

**3.** If a Car Creditor files a claim for post-petition interest and such claim is not objected to, the Car Creditor may be entitled to receive payments of such amounts under the plan because a claim is allowed as filed if it is not objected to. 11 U.S.C. § 502(a).

Plan and completes all payments under the plan, the debtor will receive a discharge. The Car Creditor's lien may be wiped out at the time of discharge. 11 U.S.C. § 1325(a)(5)(B)(i)(I). Therefore if the debtor completes the confirmed plan, the Car Creditor will not retain a lien for post-petition interest at the contract rate if the plan provided to the contrary.

The Car Creditors argue that state law defines their rights. This is true. *Nobelman. v. American Savings Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228, 235 (1993); *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39, 46 (1992); *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141–142 (1979).

 However, state law determines rights in property only to the extent such rights are not modified by the Bankruptcy Code. Section 1322(b)(2) of the Bankruptcy Code expressly permits modification of the Car Creditor's rights subject to the limitations set forth in Section 1325 of the Bankruptcy Code.

The Car Creditors also argue that they should receive payment at the contract rate because Congress intended to create a safe-harbor for automobile lenders. Congress did create a safe-harbor for automobile lenders which protects them from the cram down of their claims to the value of the vehicle as of the bankruptcy petition date. The safe-harbor does not extend to provide automobile lenders post-petition interest at the contract rate.

### CONCLUSION

A creditor whose claim comes within the 910 Day Car Language contained in Section 1325(a)(9) of the Bankruptcy Code is entitled to receive post-petition interest at a current rate determined by an adjustment from the prime rate based on the risk of nonpayment under *Till*. BAPCPA did not change nor overrule *Till*. In this District, the interest rate applicable for secured claims in Chapter 13 plans established pursuant to Local Bankruptcy Rule 3015–3 is presumed to be an appropriate rate under *Till*. Accordingly, the interest rate set forth in Local Bankruptcy Rule 3015–3 is the proper rate of interest to be paid in this District to a creditor with a purchase money security interest in a vehicle acquired by the debtor for personal use within 910 days preceding the date of the bankruptcy filing. An appropriate order incorporating this ruling shall be entered in each of the cases referenced herein.