**In re Michael Tyrone BROOKS, Sandra Denise Brooks, Debtors.**

**No. 05–10644–8–JRL.**

United States Bankruptcy Court, E.D. North Carolina, Wilson Division.

June 9, 2006.

John T. Orcutt, Offices of John T. Orcutt, P.C., Raleigh, NC, for Debtors.

### ORDER

J. RICH LEONARD, Chief Judge.

This matter is before the court on the Chapter 13 trustee's motion for confirmation. On March 30, 2006, the court conducted a hearing in Wilson, North Carolina.

### BACKGROUND

Centrix Funds Series, CLPF ("Centrix") is a creditor in the debtors' case, secured by a 2003 Mitsubishi Gallant, with a claim in the amount of $12,530.25. The debtors purchased the vehicle on May 31, 2005 and filed their petition on December 13, 2005. Their Chapter 13 plan provides for payment of the Centrix claim in full with interest at the rate of 7.75 percent, which is the "trustee's rate." [1]

On January 28, 2006, Centrix filed an objection to the debtors' proposed plan asserting that the "hanging paragraph" [2] after § 1325(a)(9) entitles it to payment in full with interest at the contract rate. Centrix believes the *Till* rate is only applicable in a Chapter 13 cramdown and the "hanging paragraph" prevents a cramdown of certain claims ("910 claims") under § 506. *See* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The debtors have conceded that Centrix has a 910 claim; therefore, Centrix asserts that it must be paid at the contract rate of interest.

At the hearing, the debtors informed the court that they intended to modify their proposed plan so that no interest is paid on the Centrix claim. The modification is based on their assertion that § 1325(a)(5) is unavailable to a creditor with a 910 claim. If § 1325(a)(5) does not apply, Chapter 13 plans can be confirmed without providing for interest on such claims. The debtors acknowledge, however, that if § 1325(a)(5) is available to these creditors, interest should be calculated at the *Till* rate.

The court deferred ruling on the motion to allow the parties to file memoranda of law in support of their positions. Both parties have filed a memorandum and an amicus brief was filed by GMAC and Ford Motor Credit Company in support of the

---

1. The trustee's rate is calculated at the rate used in *Till v. SCS Credit Corporation*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), as adopted by this court in *In re Kelly*, Case No. 05–05864–8–JRL (Bankr.E.D.N.C. Dec. 13, 2005).

2. The "hanging paragraph" was added to the end of § 1325(a) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

objection to confirmation filed by Centrix.[3] Briefing concluded on May 15, 2006. After carefully reviewing the arguments, the court will rule on this motion without further hearing.

### ANALYSIS

■ There is an unnumbered paragraph in § 1325 that was added to the Code by BAPCPA and is referred to by some courts as the "hanging paragraph." *See In re Carver,* 338 B.R. 521, 523 (Bankr. S.D.Ga.2006); *In re Montoya,* 341 B.R. 41 (Bankr.D.Utah 2006). The hanging paragraph provides, for the purposes of § 1325(a)(5), that

> section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing of the petition, and the collateral for the debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. . . .

11 U.S.C. § 1325 (2005) (effective October 17, 2005).

In order to understand the effect of the hanging paragraph, it is necessary to examine § 506. Under § 506(a)(1),

> an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest or the

amount subject to setoff is less than the amount of such allowed claim.

This provision allows a debtor to bifurcate an allowed secured claim, treating it as secured to the extent of the value of the collateral and treating the rest of the claim as unsecured. *See In re Corbett,* Case No. 03–02327–8–ATS (Bankr.E.D.N.C. July 13, 2005); *In re Stout,* Case No. 05–06121–8–JRL (Bankr.E.D.N.C. Oct. 5, 2005).

A majority of the courts that have analyzed the language of the hanging paragraph have held that it prevents debtors from bifurcating 910 claims. "Such a creditor is entitled to the full payment of his contractual claim or to the return of the vehicle." *In re Johnson,* 337 B.R. 269, 272 (Bankr.M.D.N.C.2006). *See also In re Robinson,* 338 B.R. 70, 74 (Bankr.W.D.Mo. 2006); *In re Fleming,* 339 B.R. 716, 722 (Bankr.E.D.Mo.2006); *DaimlerChrysler Financial Services, N.A. LLC v. Brown (In re Brown),* 339 B.R. 818, 821–22 (Bankr.S.D.Ga.2006); *In re Montoya,* 341 B.R. at 44; *In re Shaw,* 341 B.R. 543, 545–46 (Bankr.M.D.N.C.2006). The debtors argue that the hanging paragraph does more than prevent bifurcation; it renders § 1325(a)(5) inapplicable to 910 claims.

#### A. § 1325(a)(5)

Section § 1325(a) is the provision in the Code that sets forth the requirements for confirmation of a Chapter 13 plan. Under subsection (5), "with respect to each allowed secured claim provided for by the plan," the holder of such a claim must have accepted the plan, or retained its lien until the payment of the debt or discharge, or the debtor must have surrendered the collateral. *See* 11 U.S.C. § 1325(a)(5) (2005) (effective October 17, 2005). If the credi-

---

**3.** The brief filed by GMAC and Ford Motor Credit Company asserts that § 1325(a)(5) is available to creditors with 910 claims but argues that the *Till* rate should apply to these claims. Centrix believes the contract rate of interest should apply. As such, the amicus brief does not fully support the objection to confirmation filed by Centrix.

tor retains its lien, the debtor must provide "future property distributions (such as deferred cash payments) whose total value, as of the effective date of the plan, is not less than the allowed amount of the creditor's claim." *In re Robinson,* 338 B.R. at 72–73.

The debtors contend that in order for § 1325(a)(5) to apply to 910 claims, there must be an "allowed secured claim." A claim is "deemed allowed" if it meets the requirements of 11 U.S.C. § 502. However, the term "secured" is not defined by the Code.[4] The debtors believe that a claim is defined as "secured" for the purposes of § 1325(a)(5) under § 506. If 910 claims are not "secured" under § 506, the debtors argue that such claims are not included in the purview of § 1325(a)(5).

### 1. An "allowed secured claim"

The amici argue that the determination of whether a claim is secured is made under state law, not federal law, and a creditor does not lose his secured status merely because § 506 is not applicable to 910 claims under the hanging paragraph. *See In re Montoya,* 341 B.R. at 44. As one bankruptcy court observed, "it is neither necessary nor appropriate to contort § 506 into a definitional provision." *See In re Brown,* 339 B.R. at 821. The court in *Brown* found that if the 910 claims are allowed under § 502 and secured by underlying collateral, the claims are "allowed secured claims" under § 1325(a)(5). *Id.* The debtors contend that the hanging paragraph does not completely strip a creditor with a 910 claim of its secured

status but for the purposes of § 1325(a)(5), that creditor is not "secured."

■ The court must examine the language of the statute to determine if a creditor can be "secured" without § 506 because "[t]he task of resolving the dispute over the meaning of [a Code provision] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In reviewing § 506, the court notes that the provision begins with, "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of the creditor's interest." The first part of the statute acknowledges that a claim may be allowed and secured outside of § 506 by its reference to an allowed claim that is already secured "by a lien on property." If such a claim falls under § 506, its value will be determined by subsection (a). A claim secured by collateral that has a value less than the amount of the claim may be treated as partially or wholly unsecured in a Chapter 13 plan. *See In re Kidd,* Case No. 93–00780–5–ATS (Bankr.E.D.N.C. Oct.15, 1993). If an allowed secured claim does not fall under § 506, however, the only consequence is that it will not have to pass the § 506 valuation requirement.[5]

The United States Supreme Court examined each sentence of § 506(a) in *Associates Commercial Corp. v. Rash* to determine its meaning and intent. *See* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148

---

**4.** The Code defines "security interest" but not "secured." See 11 U.S.C. § 101(51) (2005).

**5.** The debtors cite an unpublished opinion from the Fourth Circuit where the Court found that "[t]he determination of an allowed claim's secured status is an independent inquiry governed by 11 U.S.C. § 506." *See*

*Bailey v. Bailey (In re Bailey),* Case No. 97–2691, 1998 WL 403327, *1, 1998 U.S.App. LEXIS 15129, *2 (4th Cir. July 7, 1998). This court agrees that, if § 506 is applicable, an allowed secured claim must be examined under § 506 in order to determine its treatment in a Chapter 13 plan.

(1997). The debtors in Rash sought to retain a truck in a cramdown and argued that the foreclosure value of the truck represented the creditor's interest under § 506(a). The creditor asserted that the replacement value was the appropriate standard. The Court recognized that the debtor could invoke his "cram down power" pursuant to § 1325(a)(5), allowing him to keep his property over the objection of a creditor if he provided the creditor with payments totaling the present value of the allowed secured claim. *Id.* at 957, 117 S.Ct. 1879. To determine the value of the "allowed secured claim," it was necessary for the Court to examine § 506(a). *Id.* The Court found that "[t]he first sentence, in its entirety, tells us that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." *Id.* at 960, 117 S.Ct. 1879. The "second sentence of § 506(a)" explains how to value the collateral. *Id.* at 961, 117 S.Ct. 1879. In its careful analysis of the subsection, the Court never suggested that § 506(a) defines "secured" or that a claim is unsecured for the purposes of Chapter 13 plan confirmation without § 506.

 The Court's interpretation of § 506(a) as strictly a method of valuing an allowed secured claim, rather than a definitional provision, is also consistent with its holding in *Dewsnup v. Timm*, where the Court found that the term, "allowed secured claim" in § 506(d) was not defined by § 506(a). *See* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The *Dewsnup* Court held that a claim was an "allowed secured claim" because it was allowed under § 502 and secured by a lien. *Id.* Based on the plain language of § 506(a) and the United States Supreme Court's

interpretation of the statute, this court finds that a 910 claim may be an "allowed secured claim" for the purposes of § 1325(a)(5), regardless of the inapplicability of § 506. However, as 910 claims are not subject to the valuation requirements of § 506, such claims cannot be bifurcated. Instead, a 910 claim "is allowed in the amount of the balance owed as of the petition date." *In re Fleming,* 339 B.R. at 722.

### 2. *In re Carver*

The debtors have urged the court to adopt the reasoning in *In re Carver* and treat 910 claims as a special class of claims in a Chapter 13 plan. *See* 338 B.R. 521, 526 (Bankr.S.D.Ga.2006). As this case has been widely cited for its unorthodox approach to the hanging paragraph, the court will address it.[6] The debtors in *Carver* proposed a Chapter 13 plan that treated a creditor with a 910 claim as fully secured but did not provide for interest on the claim. *Id.* at 522. The creditor objected on the basis that it was entitled to interest at the contract rate. The bankruptcy court began its analysis of the issue by reviewing recent cases that had addressed the hanging paragraph. The court disagreed with "the assumption" these cases had made "that claims secured by collateral become 'secured claims' for purposes of distribution in Chapter 13 cases." *Id.* at 525. Finding that "the only generally applicable definition of a secured claim comes from § 506," the court concluded that the hanging paragraph prevents 910 claims from "being treated as secured under a Chapter 13 plan." *Id.* at 526. As support for its argument, the court noted that the hanging paragraph makes no express statement that "910

---

**6.** Several courts have declined to follow the *Carver* reasoning. *See In re Turner,* Case No. 05–45355, 2006 Bankr.LEXIS 628, *11

(Bankr.D.S.C. Mar. 31, 2006); *In re DeSardi,* 340 B.R. 790, 812 (Bankr.S.D.Tex.2006).

claims should be considered secured after it states § 506 does not apply." *Id.*

■■■ This court finds that such a statement is not required in the hanging paragraph because a claim can be secured without the application of § 506. The "determination of property rights in the assets of a bankrupt's estate" is left to state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Nobelman v. American Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). However, state law only controls to the "extent such rights are not modified by the Bankruptcy Code." *In re Fleming,* 339 B.R. at 724. Section 506 modifies the rights of creditors, secured by a lien under state law, by allowing their claim to be treated as unsecured if the value of the creditor's collateral is less than the amount of the claim. If § 506 does not apply, the rights of the secured creditor under state law are not modified and the claim remains fully secured. For the reasons stated, the court declines to adopt the reasoning in *Carver* or the judicial remedy proposed in that case.[7]

B. *Interest in a 910 Claim*

■ The courts that have addressed 910 claims and the hanging paragraph have overwhelmingly held that interest paid on such claims should be calculated at the *Till* rate. *See In re Johnson,* 337 B.R. at 273; *In re Robinson,* 338 B.R. at 75; *In re Wright,* 338 B.R. 917, 920 (Bankr.M.D.Ala. 2006); *In re Brown,* 339 B.R. at 822; *In re Fleming,* 339 B.R. at 723–24; *In re DeSardi,* 340 B.R. 790, 2006 WL 1061893 at *22–23; *In re Shaw,* 341 B.R. at 546–47; *In re Pryor,* 341 B.R. 648, 650–51 (Bankr. C.D.Ill.2006). Under 11 U.S.C. § 1322(b)(2), a Chapter 13 plan can modify

the rights of secured creditors "as long as it provides the lien retention-present value-periodic payments treatment required under § 1325(a)(5)(B)." *In re Fleming,* 339 B.R. at 723. As the hanging paragraph does not prevent the application of § 1322(b)(2) to 910 claims, the court finds that the interest on such claims does not have to be calculated at the contract rate. *See In re Brown,* 339 B.R. at 822. This district has adopted the prime-plus rate used in *Till* to calculate interest on a secured claim pursuant to § 1325(a)(5)(B)(ii). *Till* has not been abrogated by BAPCPA and it is the appropriate rate of interest to apply to 910 claims.

### CONCLUSION

Based on the foregoing, the court finds that in order to confirm a Chapter 13 plan with a 910 claim, the plan must provide for full payment of the secured claim with interest calculated at the *Till* rate. The debtors' original plan, as incorporated into the trustee's motion for confirmation, meets these requirements. Accordingly, the objections to confirmation are overruled, and the debtors' amendment to reduce the interest to zero is disallowed. The plan will be confirmed as submitted by the trustee.

---

7. The court allowed the creditor in *Carver* the greater of the full amount of the claim without interest or the amount the creditor would receive if the claim were bifurcated and crammed down. *In re Carver,* 338 B.R. at 528.