**In re Larry and Tabitha MOORE, Debtors.**

No. 6:05–BK90056M.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Oct. 24, 2006.

---

Stephen Wade Parker, Dickerson Law Firm, Hot Springs, AR, for debtors.

Jo-Ann L. Goldman, Little Rock, AR, Chapter 13 Trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

The issue in this contested matter is whether Larry James Moore and Tabitha Y. Moore ("Debtors") may surrender an automobile to AmeriCredit Financial Services ("AmeriCredit") in full satisfaction of AmeriCredit's claim that is secured by the vehicle.

On November 14, 2005, the Debtors filed a voluntary petition for relief and a plan of reorganization under the provisions of Chapter 13 of the United States Bankruptcy Code. On February 6, 2006, the Debtors modified their plan, proposing to surrender a Cadillac automobile to AmeriCredit. The modified plan provided that AmeriCredit could file an unsecured claim for any deficiency after the Cadillac was liquidated.

The Trustee objected to this modification on the grounds that under an amendment to 11 U.S.C. § 1325, AmeriCredit was not entitled to an unsecured claim for any deficiency that might result after AmeriCredit liquidated its collateral. Subsequently, on April 10, 2006, the Debtors proposed to surrender the Cadillac in full satisfaction of the entire claim.

AmeriCredit objected to the proposed modified plan, and trial on the merits of the objection was heard in Hot Springs, Arkansas, on June 14, 2004. The matter was submitted to the Court on stipulated facts, and all parties have filed briefs.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in this case.

## FACTS

When the Debtors filed their bankruptcy petition and schedules, they scheduled a 2001 Cadillac Catera automobile valued at $14,500.00. (Schedule B—Personal Property.) The Cadillac was purchased August 26, 2005, for the sum of $14,810.00 from Landers and was financed by AmeriCredit. The parties stipulated that AmeriCredit holds a properly perfected security interest in the vehicle to secure a claim in the sum of $15,304.89 on the date the petition was filed, November 14, 2005. The retail sales contract bears interest at the rate of 20.79% per annum and is payable at the rate of $400.25 per month for 60 months from August 26, 2005, until paid.

The parties also stipulated that the Gold Book estimate of the value of the Cadillac as of May 25, 2006, was $9,350.00 retail and $7,300.00 trade-in. AmeriCredit's claim results from a purchase money debt secured by a security interest in a vehicle

purchased within 910 days of the bankruptcy filing. The retail sales contract states that the car was purchased for personal, family, or household use.

## ARGUMENT

The Debtors and the Trustee argue that under 11 U.S.C. § 1325(a)(5), a plan may deal with a secured creditor's claim by (1) obtaining the creditor's acceptance of the plan, (2) providing for full payment of the creditor's allowed secured claim or (3) surrendering the property securing such claim to the creditor. They contend that the Cadillac is a "910 car", that is, a vehicle owned by the debtors for their personal use and purchased within 910 days preceding the bankruptcy filing. Because the Cadillac is a 910 car, the "hanging paragraph", a recent amendment to 11 U.S.C. § 1325, applies. The Trustee and Debtors argue that the hanging paragraph eliminates the application of 11 U.S.C. § 506 in this instance. The effect is that the claim of AmeriCredit is fully secured for all purposes under a Chapter 13 plan, and the car may be surrendered in full satisfaction of the creditor's claim.

AmeriCredit argues that even though Section 506 no longer applies to its claim, 11 U.S.C. § 1325(a)(5)(B)(ii) is still applicable. That Code section requires a plan to provide that with respect to each allowed secured claim, "the value, as of the effective date of the plan, of property to be distributed under the plan, on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii) (2006). AmeriCredit reasons that because section 1325(a)(5)(B)(ii) now requires 910-car claims to be paid in full, the same requirement applies under section 1325(a)(5)(C). Permitting the Debtors to surrender the Cadillac in full satisfaction of the claim would result in less than full satisfaction of

the claim if a deficiency exists after liquidating the vehicle since the Debtors do not propose to pay any potential deficiency. Also, AmeriCredit states that this result would be contrary to the intent of Congress that 910 car lenders are to be paid in full.

## DISCUSSION

In a Chapter 13 case, the Bankruptcy Code allows a debtor three options when dealing with a creditor holding a secured claim. These three options are set out as part of the requirements for a confirmable Chapter 13 plan under section 1325(a)(5) of the Bankruptcy Code. Pursuant to that section, the relevant provisions mandate confirmation if

> (5) with respect to each allowed secured claim provided for by the plan—
>
>> (A) the holder of such claim has accepted the plan; [or]
>>
>> (B) the plan provides that
>>
>> . . .
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . . [or]
>
>> (C) the debtor surrenders the property securing such claim to such holder
>>
>> . . .

11 U.S.C. § 1325(a)(5)(A)-(C)(2006).

With reference to section 1325(a)(5), an amendment to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA") inserted the aforementioned hanging paragraph. That paragraph provides,

> For purposes of paragraph (5), section

506 [1] shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

11 U.S.C. § 1325(a)(9)(2006).

In cases where the debtor elects to keep the vehicle pursuant to section 1325(a)(5)(B)(ii), this Court and other courts have concluded that if the hanging paragraph is applicable, the debtor must pay the entire amount of the creditor's claim regardless of the value of the collateral. *In re Brooks,* 344 B.R. 417, 421 (Bankr.E.D.N.C.2006)(citing *In re Fleming,* 339 B.R. 716, 722 (Bankr.E.D.Mo. 2006)); *In re Scruggs,* 342 B.R. 571, 575 (Bankr.E.D.Ark.2006); *In re Shaw,* 341 B.R. 543, 546–47 (Bankr.M.D.N.C.2006); *In re Brown,* 339 B.R. 818, 820 (Bankr. S.D.Ga.2006); *In re Johnson,* 337 B.R. 269, 273 (Bankr.M.D.N.C.2006). *But see In re Carver,* 338 B.R. 521, 526 (Bankr. S.D.Ga.2006) (reasoning that the Bankruptcy Code as amended prevents 910 claims from being treated as secured in Chapter 13 plans).

Nothing in the text of the hanging paragraph prohibits its applicability to the debtor's option to surrender collateral under Section 1325(a)(5)(C). If a 910–claim is fully secured under Section 1325(a)(5)(B)(ii) and bifurcation is prohibited, as the majority of courts have thus far held, there is no logic in saying that a 910–claim may still be bifurcated if the debtor chooses instead to surrender the collateral pursuant to Section 1325(a)(5)(C).

Under cases filed before BAPCPA was enacted, if a Debtor desired to surrender a vehicle to the creditor utilizing subsection (C), then Section 506 was used to determine the amount of credit to be applied to the creditor's secured claim. This was done by conducting a hearing to determine the value of the property surrendered or by simply relying on the creditor to liquidate the collateral and then file an unsecured claim for any deficiency. This procedure, obviously, has been eliminated by the hanging paragraph, which makes Section 506 inapplicable to 910–car claims. Other courts have so held. *See, e.g., In re Evans,* 349 B.R. 498, 500–01 (Bankr.E.D.Mich.2006)(stating that pursuant to section 1325(a)(5)(C) surrender of collateral fully satisfies claim of 910–car lenders); *In re Nicely,* 349 B.R. 600, 602–03 (W.D.Mo.2006) (holding debtors could surrender an automobile governed by the hanging paragraph in complete satisfaction of the claim); *In re Brown,* 346 B.R. 868, 877 (Bankr.N.D.Fla.2006) (concluding that hanging paragraph allows debtor to surrender his vehicle in full satisfaction of 910–car lender's claim); *In re Ezell,* 338 B.R. 330, 342 (Bankr.E.D.Tenn.2006) (finding that 910–car lender is fully secured under section 1325(a)(5)(C) and regardless of the amount creditor might realize from liquidation of its collateral upon surrender, there can be no deficiency balance because section 506(a) is inapplicable).

---

**1.** Section 506(a)(1) states that a creditor's allowed claim that is secured by a lien in property of the bankruptcy estate "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such claim." 11 U.S.C. § 506(a)(1) (2006).

The comments of the court in the case of *In re Osborn* are appropriate here. In that case the court stated,

The language of the hanging paragraph is clear. It provides that *"[f]or purposes of paragraph (5), section 506 shall not apply"* to a secured claim if the creditor is a hanging paragraph creditor. There is no ambiguity in this provision: if you are a hanging paragraph creditor, § 506 does not apply to your claim, and a plan cannot provide for bifurcation of it . . . [T]his plain language does not differentiate, in any way, between the options provided in paragraphs (B) and (C) of § 1325(a)(5). Thus, in order to prevail, [a creditor] must show that literal application would either be contrary to congressional intent or would produce an absurd result.

. . .

In addition, the literal application of the statutory language does not result in an absurd outcome. "A result will only be deemed absurd if it is unthinkable, bizarre, or demonstrably at odds with the intentions of the drafters." As discussed above, literal application is not demonstrably at odds with Congress' intent; and it is entirely logical that, if a creditor is to be deemed fully secured for one purpose, it should be fully secured for other purposes.

*In re Osborn*, 348 B.R. 500, 504–05 (Bankr.W.D.Mo.2006)(footnotes omitted).

The hanging paragraph as written has two effects, much like a double-edged sword. If the debtor retains the vehicle, the claim must be paid in full over the life of the plan, but if the debtor surrenders the vehicle to the creditor, that is the end of it. The creditor has no claim for a deficiency because section 506 does not apply.

The only reported decision, so far, contrary to this analysis is the case of *In re Duke*, 345 B.R. 806 (Bankr.W.D.Ky.2006). In that case, the court determined that the language of the hanging paragraph was ambiguous, and the court concluded that Congress intended to "provide more protection to creditors with purchase money security interests." 345 B.R. at 809. This Court disagrees with the analysis in the *Duke* case for two reasons: first, Congress did not provide more protection than is stated in the statute and second, the statute is not ambiguous. To reach the conclusion found in the *Duke* case would require the Court to ignore the express language of the statute making section 506 inapplicable to this class of creditors.

AmeriCredit's argument that its deficiency claim must still be paid in full as a secured claim although the collateral has been surrendered is without merit. Congress has the power, of course, to require that certain claims, with or without collateral, be paid in full in a Chapter 13 plan. In fact, Congress has done so with regard to several classes of creditors, such as those owed taxes and child support obligations. Nowhere in BAPCPA does Congress expressly provide 910–car lenders such preferential treatment. The Court finds no statutory support for the interpretation urged by AmeriCredit.

For these reasons, the objection of AmeriCredit is overruled, and the plan is confirmed.

IT IS SO ORDERED.