# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

————————

No. 07-6071

————————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Future Trust, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Omega Consulting as assignee of | * | Appeal from the United States |
| Table Rock Business Services, Inc., | * | Bankruptcy Court for the |
| | * | Western District of Missouri |
| Movant - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| R. Deryl Edwards, Sr., | * | |
| | * | |
| Trustee - Appellee. | * | |

————————

Submitted: April 22, 2008
Filed: May 8, 2008

————————

Before KRESSEL, Chief Judge, SCHERMER and MAHONEY, Bankruptcy
Judges

SCHERMER, Bankruptcy Judge

Omega Consulting ("Omega") as assignee of Table Rock Business Services, Inc. ("Table Rock") appeals the order of the bankruptcy court[1] denying Omega's application for payment of unclaimed funds from the Chapter 11 bankruptcy estate of Future Trust, Inc. ("Debtor"). We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The issue on appeal is whether the bankruptcy court erred when it denied Omega's Motion for Payment of Unclaimed Funds pursuant to Sections 347(b) and 1143 of the Bankruptcy Code as the assignee of the Debtor. We conclude that the bankruptcy court did not err when it denied Omega's request for payment of unclaimed funds from the Debtor's Chapter 11 estate.

## BACKGROUND

In the 1980's, the Debtor operated a pre-need burial business pursuant to which customers paid the Debtor money to cover the costs of the customers' future burial services. The Debtor was supposed to hold the customers' money in trust; however, the Debtor, its parent company Table Rock, and others misappropriated funds received from customers for future burial services. On July 1, 1985, at the request of the Missouri Attorney General, the Stone County Circuit Court appointed a receiver to hold and administer the assets of the Debtor and Table Rock. On September 23, 1985, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against the Debtor. R. Deryl Edwards, Sr. ("Trustee") was appointed Trustee of the Debtor's Chapter 11 estate. On

---

[1]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

October 17, 1988, the bankruptcy court entered its order confirming a liquidating plan proposed by the Trustee and directed the Trustee to begin making distributions to the Debtor's creditors pursuant to the plan.  The Trustee attempted to distribute the Debtor's assets to creditors pursuant to the plan.  Certain checks were never cashed and others were returned as undeliverable.  On July 30, 1998, the court ordered the Trustee to deposit the unclaimed funds into the registry of the court which currently holds $167,504.51 in unclaimed funds associated with the Debtor's case ("Unclaimed Funds").

On July 16, 2007, Omega filed a motion seeking payment of the Unclaimed Funds to itself as successor in interest to the Debtor's sole shareholder, Table Rock.  Omega attached to its motion the following exhibits: (1) a copy of an assignment to recover unclaimed assets executed by Boyd Simons in his capacity as Statutory Director & Former Corporate Director on behalf of Table Rock as sole shareholder of the Debtor; (2) a list of officers and directors of Table Rock filed with the Missouri Secretary of State on August 9, 1984; (3) a copy of an envelope and letter from Boyd Simons addressed to Mr. Eric Dangerfield of Omega; (4) a photocopy of the driver's license and social security card of Eric Dangerfield; (5) a copy of an assumed name certificate for Omega; (6) a 2005 form 941 for Eric Dangerfield and Omega; (7) a copy of a Certificate of Amendment of Articles of Incorporation of the Debtor dated May 12, 1982, and an acknowledgment thereof from the Missouri Secretary of State dated May 12, 1982;  and (8) a copy of Articles of Incorporation for Table Rock dated September 25, 1979.

The Trustee opposed Omega's motion.  The Trustee attached the following documents to his opposition to Omega's motion: (1) the notice of the Debtor's Chapter 11 bankruptcy case; (2) a stipulation between the State of Missouri and the Trustee pursuant to which the State of Missouri agreed to deliver all funds collected on account of its lawsuit against the Debtor, Table Rock and others to the Trustee as property of the Debtor's bankruptcy estate for distribution to creditors;

3

(3) a bankruptcy court order approving the stipulation between the Trustee and the State of Missouri; (4) certified copies of the docket sheet, interlocutory judgment of default, temporary restraining order and appointment of receiver, first amended petition, and order approving the receiver's final report dated April 22, 2002, in the state court litigation filed by the State of Missouri against the Debtor, Table Rock, and others; (5) a copy of the 1996 Annual Registration Report for the Debtor filed with the Missouri Secretary of State showing the state court appointed receiver as the sole officer and director of the Debtor; and (6) a copy of the Administration Dissolution or Revocation for a For-Profit Corporation for the Debtor issued by the Missouri Secretary of State dated October 6, 1997.

The court conducted a hearing on the Motion. Omega presented no witnesses in support of its claim to be the successor in interest to the Debtor; nor did it present a copy of the Debtor's confirmed plan. Omega's counsel admitted that the assignment to recover unclaimed assets executed by Boyd Simons in his capacity as Statutory Director & Former Corporate Director on behalf of Table Rock as sole shareholder of the Debtor which Omega attached to its motion did not accurately represent the agreement between Omega and Mr. Simons. Omega is an asset locator which entered into a contingency fee agreement with Mr. Simons pursuant to which Omega is entitled to keep forty percent of any amount recovered and Mr. Simons and other shareholders of Table Rock are entitled to the other sixty percent.

The court took the matter under advisement. After reviewing the Debtor's case file, the court located the confirmed plan. The plan stated, "[t]hat the plan is a plan of liquidation and there shall be no successors, officers or directors, of the debtor, . . . and that no holders of equity interests will receive any distribution under the plan." [Plan, pp. 10-11.] This latter sentiment was repeated when the plan again stated, "No equity security holder nor any insider as defined in U.S.C. Sec [sic] 101 will receive any distribution." [Plan, p. 12.] The Plan further

4

provided that all classes are impaired except the Culver Funeral Services, Inc. Trust. [Plan, p. 12.] The court ultimately denied Omega's request, finding that Omega failed to establish either the right of the Debtor to the Unclaimed Funds nor a chain of title linking Omega to the Debtor. Omega appealed the denial of its motion.

## STANDARD OF REVIEW

The facts are not in dispute. We review the bankruptcy court's conclusions of law *de novo*. *Americredit Fin. Servs., Inc. v. Moore*, 517 F.3d 987, 989 (8th Cir. 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817, 821 (8th Cir. 2008).

## DISCUSSION

### Sections 347 and 1143 of the Bankruptcy Code

Omega claims entitlement to the Unclaimed Funds pursuant to Sections 347(b) and 1143 of the Bankruptcy Code. Section 347(b) provides that any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under Chapter 11 for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any confirmed plan becomes property of the debtor or of the entity acquiring the assets of the debtor under the plan. 11 U.S.C. § 347(b). Section 1143 states that if a plan requires the presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken no later than five years after the date of the entry of the confirmation order. 11 U.S.C. § 1143. Section 1143 further provides that any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distributions under the plan. *Id*. These sections of the Bankruptcy Code are akin to a statute of limitations and are designed to promote

finality and judicial economy and to avoid disruptive, wasteful litigation over unclaimed funds. *TLI, Inc. v. Lynn (In re TLI, Inc.)*, 213 B.R. 946, 950 (N.D. Tex. 1997), *aff'd* 159 F.3d 1355 (5th Cir. 1998); *In re Entire Supply, Inc.*, 2008 WL 336316, at *2 (Bankr. N.D. Ohio); *In re Goldblatt Bros., Inc.*, 132 B.R. 736, 738 (Bankr. N.D. Ill. 1991).

## Burden of Proof

Omega as the claimant bears the burden of full proof of the right to the unclaimed funds and must establish such right on petition to the court with notice to the United States Attorney. 28 U.S.C. § 2042; *In re Entire Supply, Inc.*, 2008 WL 336316, at *4; *In re Chochos*, 2007 WL 1810556, at *2 (Bankr. N.D. Ind.). Omega failed to serve notice of its motion on the United States Attorney thus forming one basis for the denial of the motion. Omega also failed to meet its burden of proof as set forth more fully below.

## Impact of Plan on Right to Recover Unclaimed Funds

The determination of a right to unclaimed funds under Sections 347 and 1143 of the Bankruptcy Code cannot be made without reference to the confirmed plan. The confirmed plan controls what if any actions or conditions to participation in plan distributions are required. The plan also controls what happens when distributions are attempted via checks which are not cashed or via checks which are returned as undeliverable. Without the plan, the court has no idea if any conditions were imposed upon participation in plan distributions nor what is supposed to happen to funds associated with uncashed distributions. Without presenting the plan, Omega cannot establish that the Unclaimed Funds fall within Section 1143. Furthermore, without the Plan, Omega cannot establish that no entity acquired the assets of the Debtor under the Plan. Even if the court were to assume the Unclaimed Funds fall within the ambit of Section 347, the court cannot determine whether such funds would revert to the

Debtor or to another entity under Section 347 without reviewing the plan. Accordingly, without presenting the plan, Omega cannot establish an entitlement of the Debtor to the Unclaimed Funds. The court did not err in denying Omega's motion and could have done so based on Omega's failure to make a prima facie case.

## The Debtor's Confirmed Plan Prohibits Omega's Recovery of Unclaimed Funds

Rather than merely denying the motion on the basis of its inadequacies, the court took the extra step of locating and reviewing the plan to determine if the Debtor might be entitled to the Unclaimed Funds under Sections 347 and 1143. The court correctly concluded that the plan prevents Omega from recovering the Unclaimed Funds. The plan expressly provides that no holders of equity interests in the Debtor will receive any distribution under the plan. Therefore, Table Rock is not entitled to receive anything under the plan as the sole shareholder of the Debtor. Accordingly, any distribution of the Unclaimed Funds to Table Rock (or to Omega as its assignee) is expressly prohibited by the plan. See *In re Entire Supply, Inc.*, 2008 WL 336316.

The same result was reached by the court in the *Entire Supply, Inc.* case where the former president of a corporate debtor sought unclaimed funds after confirmation of a liquidating plan pursuant to which the shareholders' interests were extinguished and no employees, officers, or directors of the debtor corporation remained. The court denied the former president's petition for turnover of unclaimed funds and noted that "from a policy standpoint, this result is presumably preferable to the alternative of giving the unclaimed funds to an officer of a corporation, which no longer exists, which received no discharge, and whose creditors were never paid in full." *Id.* at *5. This statement is even more true where the improper actions of the Debtor and its

7

former officers, shareholders, and directors contributed to the Debtor's demise in the first place.[2]

Omega relies on *TLI, Inc. v. Lynn (In re TLI, Inc.)*, 213 B.R. 946, 950 (N.D. Tex. 1997), *aff'd* 159 F.3d 1355 (5th Cir. 1998), in which the court held that once funds are paid into the registry of the court, the plan ceases to control the disposition of such funds; instead the funds become unclaimed funds under Sections 347 and 1143 of the Bankruptcy Code. We disagree with the reasoning of the *TLI* court and instead agree with that of the *Entire Supply* court and of the bankruptcy court herein. The plan prohibits any recovery by the former Debtor or its assignee under Sections 347 and 1143.

### Omega Failed to Establish Itself as an Assignee of the Debtor

Even if Omega could establish the Debtor's entitlement to the Unclaimed Funds, Omega has failed to link its alleged ownership rights to those of the Debtor, providing another basis for the denial of the motion. Omega asserts that it is the successor in interest to the Debtor pursuant to an assignment signed by Boyd Simons whom Omega claims is the Statutory Director and Former Corporate Director of Table Rock which in turn is the sole shareholder of the Debtor. In support of this statement, Omega attached to its motion a list of officers and directors of Table Rock filed with the Missouri Secretary of State on August 9, 1984. It is undisputed that a receiver was appointed for the Debtor and Table Rock on July 1, 1985. Additionally, the Debtor's 1996 Annual Registration Report filed with the Missouri Secretary of State lists the receiver as the Debtor's sole officer and director, superceding any earlier documents upon with Omega relies. Omega has simply not presented evidence that Boyd Simons has authority to act on behalf of the Debtor.

---

[2] We note that there is no evidence before us that Mr. Boyd Simons – the individual who entered into the agreement with Omega – was involved with the misappropriations which occurred during the 1980's.

## CONCLUSION

The bankruptcy court correctly concluded that Omega is not entitled to the Unclaimed Funds associated with the Debtor's bankruptcy estate pursuant to Sections 347 and 1143 of the Bankruptcy Code. Accordingly, the order denying Omega's motion for disbursement of the Unclaimed Funds is AFFIRMED.

---